I'd like to reserve six minutes for rebuttal, please. Good morning. May I place the court on Catherine Hazard here on behalf of the Forest Service? The District Court here erred by declaring invalid five regulations that govern the Forest Service procedures for notice, comment, and administrative appeal. These claims are not right. The mere issuance of procedural regulations such as these does not cause an Abbott Labs-like injury, causing plaintiffs to modify their conduct or face sanctions. Indeed, what they seek here is an advisory opinion, and they received one. The Forest Service recognizes that Earth Island may challenge these procedural regulations when they are applied to a particular project, as environmental groups did in the case called Siskiyou. But they have not, nor have they met the burden here of demonstrating concrete and particularized injury likely to be redressed by the remedy sought. They have identified no informational injury. It is not like the case in the Supreme Court Federal Election Commission v. Akins, where there was a final determination by an agency that information will not be provided. There has been no procedural injury until plaintiffs are deprived of a procedure in a particular context of a project for which they have a particularized interest, including a geographic nexus. Nor have they identified any notice problem. Kagan. Mr. Fensman, who is the so-called declarant here. Kagan. Wait a minute. Wasn't this originally brought in the context of a particular project, and that was settled, and now we're left with the facial challenges? Why should they have to wait for another project and another project and another project if they feel that there is a – that these regulations are inconsistent with what the statute requires? Why should they be forced to go down and challenge each project? Well, there are a couple of reasons. First, there was only one of the regulatory provisions challenged here, which was applied to the Burnt Ridge Project, which is the project they challenged. That was the categorical exclusion provision. But they brought in their dispute as to all these other regulations that weren't applied to that project. So that's one reason. Then as to the categorical exclusion regulation. Why is that a reason? Because they couldn't do that because they can't do it. Why is that a reason that they couldn't? You can't just wholesale challenge a regulation that hasn't injured you. The only project here, the only regulation that they're challenging, which was applied to the Burnt Ridge Project, was a categorical exclusion. That was not a project that was signed by the Secretary. Are they all part of the same package? Well, they're all regulations promulgated under the appeal rule, but they're not the same regulations, and so they haven't demonstrated an injury or a right of claim as to the ones that haven't been applied to them. As to the one that did apply to the Burnt Ridge Project, that timber sale has been withdrawn. The case is — that case is settled, and they bring no challenge as to the application of the regulation to that project, just a facial challenge to the mere existence of the regulation. Well, that calls me to question what, in general, happens when a party brings a claim that is specific that it has a right to bring, and it chooses to try to settle out part of the issues. Are you saying that they settled themselves out of having standing because they were willing to give up certain of the claims and that they would have had to litigate the whole thing or nothing? No, that's not what I'm saying. Obviously, somebody could settle part of a case and still have another part go forward if there were continuing injury relating to the part that wasn't settled. But don't we look at whether there was injury at the time of the filing of the case? That's, I guess, my question to you. This was brought as one entire package related to a particular project initially. Well, it was — let me just clarify that, because I think I was answering Judge Schroeder on that question, too, is they challenged on NEPA and National Forest Management Act grounds a specific project. The categorical exclusion regulation that's the subject of this lawsuit before you was applied to that project, but none of these other regulations that they're challenging were applied to that project. So they had — if you look at their complaint, they have all these specific challenges, and then they have challenges that are worded. Their challenge is to the issuance of the regulation, not to the application of the regulation. And I think that Supreme Court has been very clear that that kind of broad-scale pre-application challenge is not contemplated by the APA and is not just issued. What is the case that's strongest, the Supreme Court case that you feel is strongest on your side here? On ripeness, I think National Park and Ohio Forestry. On standing, the two Lujan cases, National Wildlife Federation and Lujan v. Defenders of Wildlife. In addition on the — What — there are an awful lot of Lujan cases. Yeah. Well, there are two that we — Well, what is the precise analogy there that you think is apt? Well, in — there are several. In Lujan v. Defenders, the Court said that the party bringing suit has to establish that they have a particularized injury, and it can't be based on the mere hope of returning to an area in the future, nor can it be based on the impacts on a broad area. And really, there's a disjuncture in the district court's analysis here. The district court said these — some of these regulations, not all of them, but some of the regulations have been applied in these — to these — or allegedly so, to these projects in the Midwest. Then, as a remedy, the Court gives a nationwide prospective relief. There's no link between the remedy and the injury. But people who like to hike and enjoy forests don't just do it in one place, necessarily. No. But to bring a lawsuit, at least the way we read the Supreme Court's rulings in Lujan v. Defenders, is they have to demonstrate that they have an intent to return there, and I think the Ashley Creek case supports that. And there's an affidavit that's insufficient here? Affidavit is insufficient, but in addition, these claims are not right. Mr. Bensman has visited about half the national forests in the country and national parks and seems to be about as busy doing that as any human being can be. I'm really not sure what you're saying he would have to say in addition. Well, so I guess you're focusing on the standing aspect here rather than the rightness aspect. Mr. Bensman would need to say, as to a specific forest where the procedural rule has been applied to a timber project or whatever project it is he's contesting, that he intends to visit that area with some sort of specificity, you know, next summer, that he plans to go to that area. All he said here was that he hopes to visit national forests in California. It's an enormous area. Well, he has a trip planned in August to Colorado, and he has a trip planned to California in August, and he's going to Oregon and Indiana, and except for the fact that he misspells Wallowa, you know, he's got a pretty good knowledge of what's going on in Oregon. We don't contest that he would be able to challenge, and that indeed he could have challenged, the projects to which the regulations were applied in the forests that he visits regularly, the Allegheny Forest, I believe, and another one he described where a regulation was applied to a specific project, but that's not what he's done here. He wants to bring in the entire, everything that he doesn't like about the 2003 rule, he wants to bring in and have this court adjudicate, and that's, in our view, not permissible. Okay. In addition, the disjuncture that I described as to providing prospective relief for the specific application of these regulations to projects in the Allegheny National Forest is not consistent with the Supreme Court's decision in Steel Company, which says that you have to look at the injury complained of and line it up with the remedy afforded, and prospective relief in the form of declaratory injunction or declaratory judgment does not remedy something that happened in the past to somebody. The nationwide remedy here is overbroad. Where is the, where did the, okay. Now you're talking about the remedy? Yeah. Back to rightness, where did the district court go wrong? The district court quoted Abbott Labs and said the impact of the regulations on plaintiffs are sufficiently direct and immediate as to whether the issue is appropriate for judicial review. We don't see that there is any such injury here. Abbott Labs was a substantive regulation. Generally, the courts have recognized that procedural regulations don't have such immediate impacts. In Abbott Labs, the ---- Well, if there's a loss of the right to appeal certain decisions, isn't that, isn't that a ---- That's a cognizable injury. Yes, that's a cognizable injury when a person has been injured in that respect. Is that a good deal of what this is all about? If it's brought in the context of the application of the regulation to a project and a person is deprived of a procedure, then they can challenge it. They can't challenge it when it's final and in effect all over the country. In the abstract, no, because they are not injured by that. Okay. At least that's our reading of the ---- That's your reading. Okay. The Lujan cases and of the rightness cases. Okay. I wanted to ask one more question about the categorical exclusion because you did start out by saying that that was applied to the Burnt Ridge Project. Right. Under your analysis, would that provision be subject to judicial review in this case because it was, in fact, applied to a specific project and the settlement suggests that the government must have conceded at some level that this was properly brought as to that project? If we hadn't settled that case, yes. I mean, if we hadn't settled with regard to that project and withdrawn that project so that there was still a live controversy as to the application of the categorical exclusion, yes. But at the time of the filing of the complaint, there was standing and rightness and ---- There was rightness. There was no standing established. Because the only declaration regarding injury here is by Mr. Bensimon, who has no ---- he has never visited. There's no indication in his declaration that he's ever even visited the Sequoia National Forest where this project took place or that he has any intention of ever visiting it again. So you settled the case. Why? If there was no proper plaintiff? Well, we don't usually describe the reasons that we settled the case. I mean, the Forest Service decided it would commit to doing further NEPA analysis if it resumed its interest in pursuing a timber sale there or doing the salvage operations. I don't know why the government wants us to write an opinion supporting that point of view. That is, you seem to be suggesting that by reaching a settlement with respect to a specific challenge, the plaintiffs lose their whole ---- all of their right to challenge other parts of the regulation. So, therefore, they should never have settled this. We're not saying that they lost their right to challenge this by settling. They never had a right to challenge these other regulations. They never had a right to challenge this categorical exclusion regulation because they didn't demonstrate standing. Now, we agree that that one is right. Let's just ---- Sorry. I'm merging everything together here. In addition ---- You agree that the categorical exclusion is right and that your challenge is to standing. That it was right, but it's now moot. There's no project anymore. They're not injured. There's no timber sale. It's not applied to anything, the forester. Now, they could have argued that, you know, it's capable of ---- Well, then you're never going to get any kind of settlement, are you? Yeah, sure. I mean, they got what they wanted. The timber sale went away. Now, if they have a separate interest in challenging these categories ---- But that isn't all they wanted. They want the opportunity to make procedural challenges and substantive challenges. So the fact that one sale went away doesn't really answer the problem from their perspective, as I understand it, because they lost the right ---- Well, they have brought ---- I'm sorry. They have brought these kinds of challenges in other contexts, and those cases didn't settle and the timber project didn't go away. So it's ---- I mean, it's sort of unusual for a salvage ---- I'm sorry, you seem really troubled. I do. I think I'd like to get things ---- I think courts like to get matters settled. I don't think they want to see things delayed off into infinity as we have enforced plaintiffs to bring case after case after case after case when what they're complaining about is the opportunity in those future cases to have a right to be heard. Right. Well, we don't have an interest in having it pushed off forever either, but I think the Supreme Court has been clear that a regulation, unless it's a substantive regulation that causes an ablapse kind of injury where a person immediately suffers an injury of having to modify their primary conduct or face sanctions, that they can't get this ---- use the courts in this manner to get sort of wholesale reform of regulations that they find offensive to statutes that they have concerns about. I'll take the rest of my time. Thank you. Good morning, Your Honors. May it please the Court, my name is Matt Kinney, and I represent Earth Island Institute and the other conservation groups in this appeal. With me today at council table is Aaron Isherwood for the Sierra Club. I would like to come back to rightness, but first I would just like to address the issue of categorical exclusions and not permitting public notice, comment, and appeal for projects approved with a categorical exclusion. And one thing I'd like to address in the Forest Service's reply brief is they say that it is our position that environmentally significant projects can be exempted from comment and appeal and it's simply a matter of drawing the line. And that is not the case. We have never taken the position that so-called environmentally significant impacts as deemed under NEPA can be exempted from the Appeals Reform Act. Rather, the Appeals Reform Act is very clear. It says the Forest Service shall establish public notice, comment, and appeal for projects implementing forest plans. Now, there is one specific exemption in the legislative history in the Senate colloquy for permittee appeals, and it's in a case like this where you have an Appropriations Act rider, often the Senate colloquies in legislative history becomes very important since it did get passed in a fairly quick manner, and that is a single exception. But when you have painting a Forest Service building, mowing the district ranger lawn, that is not an action that implements a forest plan, and that is why they are permitted and always have been permitted to be exempted from comment and appeal. Now, there may be some very small exceptions of actions that technically implement a forest plan, and yet under the regulations before the Appeals Reform Act, we're not subject to appeal. But you can't make law based on de minimis exceptions, and I would point the panel to a recent case of the D.C. Circuit from the spring, New York v. EPA 443 F3 888, where they state the venerable maxim, de minimis non curat lex, the law cares not for trifles, invokes congressional intent that agencies may diverge from the plain meaning of a statute only so far as it is necessary to avoid its futile application. So that there may be some imaginable de minimis actions that do actually implement forest plans, and a court may allow them to be exempted from appeal, does not mean that the Forest Service can exempt timber sales, oil and gas development, and other such substantial projects which were subject to appeal before the passage of the ARA. Counsel, I would appreciate it if you would directly address the issues of standing and rightness. Yes. Because that is the government's main pitch, at least orally, without even discussing the merits. They're saying wrong forum, wrong time, wrong people. Right. Well, regarding forum, the government never argued forum, and they're prohibited. Geographic scope, I guess, is what I was talking about. The issue of rightness, the government said their key cases are the National Parks case, Ohio Forestry, and the two Lujan cases. I thought Lujan they were using for standing. Yeah, actually, Lujan versus Defenders is a standing case. That's the one with the dam in Africa. We're standing in her comments, so. Lujan versus National Wildlife Federation, though, is a rightness case. And that was where the plaintiffs had a self-defined, I realize I didn't save time for rebuttal, so I'll try and do that on my own, is a self-defined. I'm not going to get any anyways. I'm sorry? I'm not going to get any anyways. Even on a cross-appeal? Okay. That's good to know. Was a self-defined group of individual agency actions. And the Court said you can't challenge this land withdrawal review program. It's not a regulation. It's not even a program of the government. It's just a bunch of individual actions that the plaintiffs had said we're going to challenge that en masse. And the Court said, no, that is not a final agency action. And it's not right. Here we have a defined set of regulations published in the CFRs. And so the analysis comes under the toilet goods cases versus Gardner and the other one that have reverse names. Not like the Ohio forestry case where you're challenging a forest plan, which is not a published CFR regulation. Under the Abbott Labs cases and the toilet goods cases, if you have final published regulations, there's no doubt it's final agency action and the government concedes that. And the challenges are ripe, especially in this case because we're not in a pre-enforcement scenario. The argument specifically is that only one of these regulations was applied to the project that was challenged in the original complaint and that the others are, they're final in the sense that they're in the CFRs, but they're not ripe because they have not been applied to anything in the real world. What is your response to that? Or they haven't been applied to anything that affects your clients in the real world. We didn't even need the Burnt Ridge Timber Project to bring this case. It is perfectly acceptable, and the law books are filled with cases, and we've cited them in our briefs, of facial challenges to regulations where the defining event is publication of the final regulations in the Federal Register. And in the Abbott Labs, the toilet goods cases, the many D.C. Circuit cases we cited, they were all facial challenges to regulations, and there's nothing wrong with a challenge to a regulation. It's different from the Ohio forestry situation where you have a forest plan, which is not a regulation, or to National Wildlife Federation where you have a land withdrawal review program. And I think it's important not to conflate those two kinds of cases. Final regulations are challengeable. The only exceptions are, like in the toilet goods cases, where one, where it may never be applied. So in the case, one of the cases relied upon by the Forest Service, the National Parks case, that was a contract clause interpretation of the Park Service. I think it was the Park Service of the government. And it had never been applied, and it might never have been applied. And not only that, it wasn't a regulation. The Court went on to say how it was simply a legal interpretation that the government said they intended to apply in the future if it was ever necessary. In the toilet goods cases, there were companion cases. One, which was ripe, even though it was a facial challenge, not applied in any specific context, because it had already been applied to the petitioners. The one that was held to be not ripe was a regulation that there was no evidence that it would ever be applied. It was, the Court had said, this is a regulation that might never be applied, therefore we're going to wait for a specific instance. And if you look at the D.C. Circuit cases that we cited, the National Treasury, as well as National Association of Home Builders, which was the 2005 or 2006 case in National Treasury, even in a pre-enforcement context, it's okay to bring a facial challenge, as long as there are no compelling equities to withhold review. We're not even here in a pre-enforcement scenario, because each of these regulations has been applied many, many times to the plaintiffs in the case. And it doesn't matter whether it was in the Burnt Ridge Project or not, although I will note that there were many other declarations submitted on the Burnt Ridge Project at the PI stage, which were not discussed in the context of the facial challenge that moved on from that timber sale case. So talk to us about standing. I think that the key thing to understand here, and the case of the Wilderness Society v. Ray, number two, the one that came out this spring, that's an addendum to our reply brief, I think points this out better than I did. And that is standing is a particular hurdle in environmental cases often, because statutes like the Endangered Species Act or the Clean Water Act are not intended to directly protect environmental groups or appellants or any people. They're really intended, in the case of the Endangered Species Act, to protect habitats and animals and plants. In the case of the Clean Water Act, it's to protect clean water. And the regulations are geared towards that. The Appeals Reform Act is a whole other animal. Its primary focus is on groups like the plaintiffs, conservation groups or, you know, industry groups, wise use groups, average member of the public who wants to have a direct voice on the Forest Service. So in that sort of case, it makes absolutely no sense to have to go through a chain of causation, even though we do show this as well, that a person uses a particular tract of land and that if they had that appeal right, that particular tract of land might be protected better than it otherwise would. Rather, the focus is on whether the plaintiffs have been denied their appeal rights to which they allege they are entitled. And if you go through the Bensman Declaration, as to each of the regulations we've challenged, he discusses instances where it's been applied to him and where he's had his appeal rights denied or diminished. And I think that's the important thing. Now, we also showed on top of that the sort of site-specific impact. And that's the kind of thing you need to show in particular in like a Clean Water Act case where, you know, because the permit was denied or rather granted for a particular stretch of river and a plaintiff needs to show that she uses that stretch of river and that if the permit had been made more strict, be less polluted and her enjoyment of it would be better. So I think that is a real key distinction to keep in mind here. As far as the informational injury, the government really does not rebut that. We cite the cases on informational injury, and this is a classic example of the kind of statute that informational injury is for. The Appeals Reform Act, it's actually called the Forest Service Decision-Making and Appeals Act, and it's to provide notice of actions, to provide the ability for public comment, and it's to provide for an appeal right with an appeal decision. And when the government pushes through a project without subjecting a project to these procedures, the information that a plaintiff can get or a potential appellant or member of the public gets is greatly reduced, if not eliminated. You don't get the same notice you'd get under the Appeals Reform Act. You get other scoping notice, but it's not the same. You don't get the ability to comment, and you don't get the ability for the government to issue a decision as to, when you make an objection, you say, oh, I don't think you should cut that tree because it's too large a diameter. And the Forest Service might rule, oh, well, you're wrong. We're not cutting this diameter. We're cutting small diameters. Or, no, the policy, in effect, allows us to cut this large diameter of tree. You do not get that information. And that's the exact kind of informational injury that the Supreme Court has recognized. The remedy here was what? Under the APA, the remedy that the district court used was once Judge Singleton found the regulations to violate the ARA, he set them aside. The Administrative Procedure Act states that a court shall set aside agency regulations it finds to be arbitrary and capricious. There is no, you know, the standard here is an abuse of discretion. So that's a whole other factor. But certainly a judge is not for the scope of the scope of the remedy. Well, I thought you just said if the regulation is contrary to the ARA and he is required if he so finds it a matter of law to set them aside, then what? I meant the scope of appellate review. I'm sorry. The scope of review of this Court, of the district court, is de novo except on the issue of remedy. So the reason I brought that up is because even if the district court had the discretion not to set the remedy, he said that he was required to. And since we're in an abuse of discretion standard of remedy. But did he enter an injunction against their enforcement? Is that? Well, you know, yes, it's an injunction, although it's nothing special. It's just he stated, I hereby set these regulations aside, which is what the APA requires. There is no support in the law anywhere to say that a court should not do so. You know, we have large string sites where that is the customary remedy. Okay. Let's get to the merits before we use the entire morning. Okay. I — What's the most important of these regulations? Well, the most important one is the categorical exclusion regulation. That's the one that affects the greatest number of projects. And I just wanted to make the point, which I did before, that it is not our position, contrary to what the Forest Service stated, that we believe it's okay to exempt projects if they're environmentally insignificant. I think the district court may have used those words, but that's not our position. Our position is that the ARA says the Forest Service shall make subject to public comment, notice, and appeal projects implementing forest plans. And if there's de minimis exemptions, that does not mean create a reason that the Forest Service can exempt large portions of its agency mission like certain timber sales and oil and gas development, et cetera. The other regulation from the other side that we lost on below that I would like to address next, I guess, would be the emergency exemption for economic salvage. And I think the key point there to start out with is we don't object to exempting projects to prevent a property emergency. So we're not saying a fire is approaching an uninhabited forest. You can't declare an emergency for that. Of course you can. We've always agreed you can. But that is different from once the forest fire has occurred, from then saying, oh, it's an emergency that we must harvest this timber immediately without allowing a 105-day appeal period. Well, it is true, is it not, that once a fire has come through and gone out, that the quality of the wood that's left behind can diminish significantly over time. Well, I would have two responses to that. One is that factual question, I think, is relevant to the legal interpretation of what an emergency is. But secondly, I think as we did discuss in our briefs, there's no timber sale that's ever lost marketable value in a three-month period. The record shows that it's a gradual process for a service, often uses a – well, in the record used a two-year rough period for when you want to get it done by. So even as a factual matter, there's no support in the record for the idea that you need to suspend an already expedited process to salvage timber. And, in fact, if you look at the – How long did this case go from the announcement of the Burnt Ridge Project to now? How long has that been? Two years? Yeah, I was going to say two years at least, two and a half years. So what we're talking about is not 30 – not 90 days, but two years. Oh, but the reason I'm discussing the appeals is because of 90 days is, if the Forest Service has and subjects a project to comment and appeal, let's say the appeal is not meritorious. They dismiss the administrative appeal and either the sale goes forward right away or plaintiffs could apply to court. But, you know, there's rigorous standards to win in court. You have to show you have a likelihood of success on the merits, irreparable harm. And only if you have that likelihood of success in the merits would that timber sale be hung up. So all we're saying is there's not going to be a two-year wait for simply because someone files an appeal. The only automatic stay is during the appeal period. After that, you're subject to very rigorous judicial standards. So you have to get a district court injunction. Right. Or lose totally. I'm sorry? Or lose totally. Yes, that's absolutely right. Of course, if the Forest Service grants your appeal, then it holds it up too, but that's for a good reason. They are cutting something they shouldn't cut or there's some substantive reason why it should be held up. And remember, there is one thing we have not challenged and would not challenge is the emergency provision that's always available to any emergency that would actually threaten the destruction of a forest. So if the Forest Service decides there's a forest fire advancing, we need to go cut fire lines, that's, of course, an emergency. Or even if they declare there's a beetle emergency, those won't always be emergencies. But if there were some insect infestation that was an immediate need, there's a potential to use the emergency exemption there too. Where did the district court go wrong with the emergency exemption? On the economic emergencies? Yeah. The court looked at a dictionary definition to say that an emergency is any unforeseen event. And they said, okay, a forest fire is an unforeseen event, therefore, we can go in and salvage after the fact. But what we're saying is you don't look at that. Under the whole Act rule, you look at the Appropriations Act, which dealt with economics as one thing and emergencies as another. And the whole Act rule, you don't look to dictionaries or anything else. You look to that Act to see how they're treated. And they are treated very differently by the two terms are treated very differently. I see my time is up. Thank you, Your Honors. I'd like to address briefly this emergency exemption on economic salvages. One of the reasons that we think this case is prized and they don't have standing is that, I mean, there is no record in this case because there is no project challenge, there is no application of this regulation to anything. So this case doesn't have the documentation that the court would need to consider in evaluating whether this Secretary or the regulation here is reasonably promulgated to address economic situations. If the plaintiffs had brought their challenge in the context of the application of an emergency exemption to a specific project, then the court would have before it the kinds of reports that would show how quickly the timber deteriorates, the economic impacts, why the Forest Service might think it's beneficial to go ahead right away for a project like that. But there isn't that kind of record in this case. In addition, Earth Islands Council stated that each regulation that's been challenged here has been applied many times in many places to the plaintiffs here, and I just want to remind the court that our position is that the declarations do not support that. Indeed, one of the regulations challenged has never been applied anywhere, the one relating to the Secretary and Undersecretary's authority to make decisions without applying the administrative appeal regulations. Regarding the validity of the CADOX regulation, I'd just like to point that the plaintiffs here agree that not every action must be subject to the ARA procedures and that it's an issue, therefore, of line drawing, which is a Chevron Step 2 analysis, and we believe the Forest Service's position is reasonable to exempt actions from ARA procedures that don't have significant environmental impacts. If plaintiffs disagree that an action does not have significant environmental impacts, they can challenge the categorical exclusion as they did in Colorado Wild. Unless the Court has any further questions, I've covered most of the points here. There don't appear to be any. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Graber, Duffy